IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

BROTHERHOOD OF MAINTENANCE OF WAY )
EMPLOYES DIVISION/IBT                                         )
                                                                              )
                            Plaintiff,                                )
                                                                              )
            v.                                                            )   Civil Action No. 8:18-cv-250
                                                                              )
                                                                              )
UNION PACIFIC RAILROAD COMPANY,     )
                                                                              )
                            Defendant.                            )
                                                                              )

# COMPLAINT

The Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED" or "Union") brings this complaint against Union Pacific Railroad Co. ("UP" or "Carrier") for a declaratory order that UP has violated Section 2 Seventh of the Railway Labor Act ("RLA"), 45 U.S.C. § 152 Seventh, by abrogating and unilaterally changing an agreement between BMWED and UP. The agreement provides when UP changes the work schedule for certain maintenance of way gangs, the employees on the gangs may exercise their seniority off the gangs to other positions. However, UP has changed the work schedules for such gangs, refused to allow employees to exercise their seniority to other positions, and asserted that its action is permitted by the agreement; which constitutes a unilateral change of the agreement in violation of Section 2 Seventh.

1

## PARTIES

1. BMWED is an unincorporated labor association that maintains its headquarters in Southfield, Michigan. BMWED is the representative for collective bargaining under Section 1 Sixth of the RLA, 45 U.S.C. §151 Sixth, of employees of UP working in the class or craft of maintenance of way employee. On January 1, 2005, the BMWED became an autonomous division of the International Brotherhood of Teamsters. Prior to that date, BMWED was an international union founded in 1887 that went by the name Brotherhood of Maintenance of Way Employes ("BMWE").

2. UP is a rail carrier as that term is defined in Section 1 First of the RLA. UP conducts rail operations in various States in the Western portion of the United States, including Nebraska; and UP is headquartered in Nebraska. The current UP is the product of control and merger transactions that combined the rail lines and properties of the former Union Pacific R. R., the former Missouri Pacific R.R., the former Southern Pacific Transp. Co. and the former Chicago and North Western Transp. Co. and other formerly separate railroads.

## JURISDICTION AND VENUE

3. This Court has jurisdiction to hear BMWED's complaint pursuant to 28 U.S.C. §§ 1331 and 1337 because it arises under the RLA, an act of Congress regulating interstate commerce; and because BMWED seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) and (c) because UP owns and operates lines of railroad within this District and is headquartered in this District.

## STATEMENT OF THE CLAIM

5. BMWED and the UP are parties to a collective bargaining agreement that was entered by BMWE and the former Union Pacific R.R. in 1958; that agreement has since been revised and amended a number of times, including a restatement and update on July 1, 2001 ("2001 Agreement"). The 2001 Agreement applies on the UP territories and properties that were parts of the former (pre-merger) Union Pacific R.R. ("former UP"), as well as certain other portions of UP that were placed under that agreement after various mergers. The 2001 Agreement also applies to UP's mechanized production gangs called "system gangs" or "consolidated system gangs" that operate across the lines of the formerly separate (pre-merger) carriers.

6. Under the 2001 Agreement, employees accrue seniority to work positions in various classifications of maintenance of way work, and they use that seniority to respond to "bulletined" job vacancies by bidding for those jobs. Employees also exercise their seniority to "bump" or "displace" less senior employees who hold positions that are desired by the senior employees. Most UP maintenance of way jobs are on maintenance of way gangs composed of anywhere from several to potentially over one hundred workers.

7. A 2012 amendment to the 2001 Agreement, entered as a result of BMWED's national negotiations with various carriers including UP, revised certain rules applicable to maintenance of way employees who work on gangs that require them to be away from home; rules amended included those concerning meal and lodging expenses and work schedules. Among other things, the 2012 Agreement established rules providing for alternative work weeks and rest days for production gangs; and use of "consecutive compressed half work periods". Compressed half

work periods are work schedules where all of the straight time hours to be worked in a half month pay period are compressed into consecutive work days with all time paid as straight time, and with all rest days accumulated at the beginning or end of the pay period. Typically, gangs working compressed half work periods work eight consecutive 10, 11 or 12 hour days with rest days preceding or following the work days. A work schedule in which rest days follow the work days is designated a T1 schedule; a schedule in which rest days precede the work days is designated a T2 schedule.

8. Employees on a gang working a compressed half work period may exercise seniority to bump or displace into positions off that gang when the compressed period gang's work schedule is changed from T1 to T2, from T2 to T1, or from a compressed schedule to 5 eight hour days or 4 ten hour days, and when the gang's work schedule is changed from 5 eight hour days or 4 ten hour days to a T1 or T2 schedule. Employees exercise that right by providing written notice to management within three days of the announcement of the change in schedule.

9. UP established gangs 9398, 3416, 8892, 6711, 8332, 9564, 0711, 7102, 7226, and 8063 as consolidated system gangs and bulletined positions on those gangs. Those gangs were established with work schedules of 5 eight-hour days or 4 ten-hour days.

10. On December 22, 2017, UP notified BMWED that effective January 1, 2018 or January 8, 2018, UP would change the work schedules for those gangs to T1 schedules, that they would continue to work T1 schedules until April 30, 2018 or June 30, 2018, and they would then revert back to their original schedules. UP did not seek, and BMWED did not give, the Union's consent to those changes. BMWED objected to the changes.

11. On January 1, 2018 and January 8, 2018, UP implemented the changed work schedules for gangs 9398, 3416, 8892, 6711, 8332, 9564, 0711, 7102, 7226, and 8063.

13. Employees assigned to those gangs gave notice of their intent to exercise their seniority to positions off those gangs, but UP did not allow them to do so.

14. On January 5, 2018, BMWED sent a letter to UP asserting that UP's action constituted a unilateral change and abrogation of the 2001 Agreement in violation of the Railway Labor Act. The letter advised that if UP did not cease and desist from that violation and compensate affected employees, BMWED would answer the Carrier's exercise of self-help by the Union's own responsive exercise of self-help.

15. UP has continued to work gangs 9398, 3416, 8892, 6711, 8332, 9564, 0711, 7102, 7226, and 8063 on a different schedule than originally established when BMWED's members bid to the gangs in December of 2017. UP plans to make additional work schedule changes for these gangs in June and July of 2018 and will again refuse members of those gangs the opportunity to exercise their seniority to other positions in response to the change of schedule.

## CAUSE OF ACTION

16. BMWED incorporates by reference as if fully set forth herein each and every allegation of paragraphs 1 through 15.

17. Section 2 Seventh of the RLA, 45 U.S.C. §152 Seventh, provides: "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."

18. Section 6 of the RLA provides:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in the agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

19. UP's change of the work schedules of gangs 9398, 3416, 8892, 6711, 8332, 9564, 0711, 7102, 7226, and 8063 without allowing those employees to exercise their seniority to other positions, and its assertion of a right to do so over BMWED's objection, constitutes abrogation and effective unilateral change of the 2001 Agreement as amended by the 2012 Agreement and a "change [in] the ... rules [and] working conditions of its [maintenance of way] employees, as a class, as embodied in" the 2001 Agreement, not "in the manner prescribed in such agreement[] or in section 156 of" the RLA, in violation of Section 2 Seventh of the RLA.

## REQUEST FOR RELIEF

WHEREFORE, BMWED respectfully requests that the Court

A. DECLARE that UP is in violation of Section 2 Seventh of the RLA by changing the work schedules of gangs 9398, 3416, 8892, 6711, 8332, 9564, 0711, 7102, 7226, and 8063 without allowing those employees to exercise their seniority to other positions, and by asserting a right to do so over BMWED's objection;

B. GRANT BMWED reasonable attorneys' fees and the costs of this action as well as any other relief that the Court deems just and proper.

### REQUEST FOR PLACE OF TRIAL

The Plaintiff requests trial to be held at Omaha, Nebraska.

Respectfully submitted,

/s/ Richard S. Edelman
Richard S. Edelman
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street NW, Suite 400
Washington, DC 20036
(202) 783-0010
Redelman@MooneyGreen.com

/s/ Robert E. O'Connor, Jr.
Robert E. O'Connor, Jr.
P.O. Box 451116
Omaha, NE 68145
Telephone: (402) 330-5906
reolaw@aol.com

June 6, 2018

Attorneys for Plaintiffs Brotherhood of Maintenance of Way Employes Division/IBT